<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

|  |  |  |
|---|---|---|
| JAMES NICHOLAS KARIM CAINES, IV, | : | Civil No. 10-3643 (WJM) |
|  | : |  |
| Petitioner, | : |  |
|  | : |  |
| v. | : | **OPINION** |
|  | : |  |
| MICHELLE RICCI, et al., | : |  |
|  | : |  |
| Respondents. | : |  |

---

**APPEARANCES**:

> JAMES NICHOLAS KARIM CAINES, IV, #562356B
> New Jersey State Prison
> P.O. Box 861
> Trenton, New Jersey 08625
> Petitioner <u>Pro Se</u>
>
> BARBARA A. ROSENKRANS, Assistant Prosecutor
> ESSEX COUNTY PROSECUTOR
> 50 W. Market Street
> Newark, New Jersey  07102
> Attorneys for Respondents

**MARTINI**, District Judge:

James Nicholas Karim Caines, IV, filed a Petition and an Amended Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, challenging a judgment of conviction entered in the Superior Court of New Jersey, Essex County, on December 1, 1997, after a jury found him guilty of felony murder, first-degree robbery, and second-degree conspiracy to commit robbery. Respondents filed an Answer and the record, and Caines filed a Reply.  For the reasons expressed below, this Court will dismiss the Petition on the merits and deny a certificate of appealability.[1]

---

[1] To the extent that Petitioner's claims are unexhausted, this Court will deny them on the
(continued...)

## I.  BACKGROUND

By order filed December 1, 1997, after a jury sitting in the Superior Court of New Jersey, Essex County, Law Division, found Caines guilty of felony murder, robbery, and conspiracy to commit robbery, Superior Court Judge Paul J. Vichness sentenced him to a 40-year term of imprisonment, with 30 years of parole ineligibility.  (Dkt. 14-6.)  Caines appealed.  On July 20, 2000, the Superior Court of New Jersey, Appellate Division, affirmed the conviction and sentence.  See State v. Caines, Docket No. A-4987-97T4 (N.J. Super. Ct., App. Div., July 20, 2000) (Dkt. 1 at 19-40).  The New Jersey Supreme Court denied certification on January 18, 2001.  See State v. Caines, 167 N.J. 88 (2001) (table).  The Appellate Division summarized the facts as follows:

> In summary, defendant together with co-defendants Larry Mayo and Wesley Williams were convicted of the murder of Byron Thompson, a taxicab driver, in the City of Newark on the night of March 27, 1993.  The murder investigation led police to Mayo's former girlfriend who gave a statement that defendant told her he had murdered the cab driver with a double-barreled shotgun.  Defendant was then placed under arrest and advised of his Miranda rights.
>
> After voluntarily waiving his rights, defendant signed a statement admitting his participation in the murder.  He said on the day of the murder that he, Mayo and

---

[1](...continued)

merits pursuant to 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").  See Carrascosa v. McGuire, 520 F.3d 249, 255 n.10 (3d Cir. 2008) ("There is, however, a difference between granting an unexhausted habeas claim on the merits and denying such a claim on the merits, as recognized by the plaint language of section 2254(b)(2) . . . .  Denying an unexhausted claim on the merits is consistent with the statute"); Taylor v. Horn, 504 F. 3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of Taylor's claims on the merits, we need not address exhaustion"); Bronshtein v. Horn, 404 F. 3d 700, 728 (3d Cir. 2005) ("We would permit Bronshtein to attempt on remand to establish a reason to excuse his procedural default, but we find it unnecessary to do so because it is apparent that the claims in question lack merit.  Under 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here").

Williams were at his girlfriend's home in East Orange when Mayo told him of a plan to rob a cab driver. Defendant was to call the cab company for the pickup and be the lookout during the robbery. Defendant knew that Williams was armed with a black double-barreled sawed-off shotgun. When the taxi arrived, the three rode in the cab to an address Mayo gave the driver. Defendant said he got out of the cab and walked to the corner. When he heard a gunshot, he turned and saw the cab driver slumped in the driver's seat.

At trial, defendant recanted most of his written statement. He admitted taking the cab ride with Mayo and Williams but said that he did so in order to purchase drugs in the area. He denied any prior knowledge of their intention to commit a robbery or that either of them had a shotgun. Referring to the written statement given to police, defendant claimed that his signature on each page was forged. In response the State called Sergeant Daniel Poland, supervisor of the Document Examination Unit of the New Jersey State Police. Qualified as a handwriting expert, Sergeant Poland compared signatures of defendant on several documents with the signatures on defendant's statement and opined they were signed by the same person.

State v. Caines, Docket No. A-0731-06T4 sl. opinion  (N.J. Super., App. Div., July 10, 2009)

(Dkt. 16-4).

On March 10, 2001, Caines filed a state petition for post-conviction relief ("PCR").  (Dkt.

13-3.)  Judge Vichness denied relief by order filed August 1, 2006.  (Dkt. 15-7.)  Caines

appealed, and the Appellate Division affirmed on July 10, 2009.  See State v. Caines, Dkt. No.

A-0731-06T4 sl. opinion (N.J. Super. Ct., App. Div., July 10, 2009) (Dkt. 16-4).  On October 28,

2009, the New Jersey Supreme Court denied certification.  See State v. Caines, 200 N.J. 477

(2009) (table).

The Clerk received Petitioner's undated § 2254 Petition on July 19, 2010.  After this

Court issued a Notice and Order pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000),

Caines filed an Amended Petition.  The Amended Petition presents the following grounds:

Ground One:  THE ARREST WARRANT WAS ISSUED UNLAWFULLY AND DEFENDANT'S STATEMENT OBTAINED IN ITS WAKE WAS

UNLAWFULLY TAKEN VIOLATING HIS IV, V AND VI AMENDMENT
RIGHTS OF THE U.S. CONSTITUTION.

Ground Two:  THE "OPENING THE DOOR" DOCTRINE WAS MISAPPLIED
TO THE ABSENT WITNESS, ROGER HOYTE'S STATEMENT, THUS
ADMITTING HIS OUT OF-COURT STATEMENT UNLAWFULLY IN
VIOLATION OF HIS VI AMENDMENT RIGHT TO CONFRONTATION.

Ground Three:  THE PROSECUTOR COMMITTED A SHOCKING AND
PREJUDICIAL SERIES OF "MISSTATEMENTS" WHICH REQUIRE
REVERSAL.

Ground Four:  DEFENDANT'S TESTIMONY THAT HE WAS AN INNOCENT
COMPANION TO THE ARMED ROBBERS WITH NO KNOWLEDGE OF
WEAPONS OR EXPECTATION OF HARM, THE AFFIRMATIVE DEFENSE
TO FELONY-MURDER HAD TO BE CHARGED, BUT WAS NOT.  THE
COURT COMMITTED PLAIN ERROR BY NOT PROVIDING A "LESSER
INCLUDED/LESSER INTENT["] COMPONENT TO THE ACCOMPLICE
LIABILITY INSTRUCTION VIOLATING HIS VI AMENDMENT DUE
PROCESS RIGHTS.

Ground Five:  THE SUDDEN TERMINATION OF DEFENDANT['S] FIRST
TRIAL PURSUANT TO DEFENSE COUNSEL'S UNNECESSARY MISTRIAL
MOTION ESTABLISHED A BAR OF DOUBLE JEOPARDY FOR THE
SECOND TRIAL BECAUSE THE FAILURE OF EITHER THE STATE TO
PROVIDE, OR OF DEFENSE COUNSEL TO PROCURE, THE MISSING
REPORTS WAS NOT A JUSTIFIABLE EXCUSE.

Ground Six:  NUMEROUS LAPSES IN TRIAL COUNSEL'S
REPRESENTATION DEPRIVED DEFENDANT OF HIS RIGHT TO
EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE VI, AND XIV
AMENDMENT[S] OF THE UNITED STATES CONSTITUTION[.]

(Dkt. 5 at pp. 4-10.)

Respondents filed an Answer and portions of the record, arguing that this Court should

dismiss the Amended Petition.  Caines filed a Reply.

## II.  STANDARD OF REVIEW

Section 2254(a) of title 28 of the United States code gives this Court jurisdiction to

entertain a habeas petition as follows:

> [A] district court shall entertain an application for a writ of habeas
> corpus in behalf of a person in custody pursuant to the judgment of
> a State court only on the ground that he is in custody in violation of
> the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

"As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal

court to grant an application for a writ of habeas corpus on behalf of a state prisoner." Cullen v.

Pinholster, 131 S. Ct. 1388, 1398 (2011).  Section 2254(a) permits a court to entertain only

claims alleging that a person is in state custody "in violation of the Constitution or laws or

treaties of the United States."  28 U.S.C. § 2254(a).  The AEDPA further limits a federal court's

authority to grant habeas relief when a state court has adjudicated petitioner's federal claim on

the merits.[2]  See 28 U.S.C. § 2254(d).  If a claim has been adjudicated on the merits in state court

proceedings, this Court "has no authority to issue the writ of habeas corpus unless the [state

c]ourt's decision 'was contrary to, or involved an unreasonable application of, clearly established

Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an

---

[2] "[A] claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground." Lewis v. Horn, 581 F. 2d 92, 100 (3d Cir. 2009) (quoting Thomas v. Horn, 570 F. 3d 105, 117 (3d Cir. 2009)).  "Section 2254(d) applies even where there has been a summary denial." Cullen, 131 S.Ct. at 1402.  "In these circumstances, [petitioner] can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis' for the [state c]ourt's decision." Id. (quoting Harrington v. Richter, 131 S.Ct. 770, 786 (2011)).

5

unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"[3]  Parker v. Matthews, 132 S.Ct. 2148, 2151 (2012) (quoting 28 U.S.C. § 2254(d)).

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court.  See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004).  Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."  Williams v. Taylor, 529 U.S. 362, 412 (2000).  A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."  Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).  "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' [and] therefore cannot form the basis for habeas relief under AEDPA."  Parker, 132 S.Ct. at 2155 (quoting 28 U.S.C. § 2254(d)(1)).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result."  Williams, 529 U.S. at 405-06.  Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Williams, 529 U.S. at 413.  However, under § 2254(d)(1), "an *unreasonable* application of federal law is

---

[3] However, when "the state court has not reached the merits of a claim thereafter presented to a federal habeas court, the deferential standards provided by AEDPA . . . do not apply."  Lewis at 100 (quoting Appel v. Horn, 250 F. 3d 203, 210 (3d Cir. 2001)).

different from an *incorrect* application of federal law."  Harrington, 131 S. Ct. at 785 (quoting

Williams at 410).  As the Supreme Court explained,

> A state court's determination that a claim lacks merit precludes
> federal habeas relief so long as fairminded jurists could disagree on
> the correctness of the state court's decision . . . .  Evaluating
> whether a rule application was unreasonable requires considering
> the rule's specificity.  The more general the rule, the more leeway
> courts have in reaching outcomes in case-by-case determinations.
> It is not an unreasonable application of clearly established Federal
> law for a state court to decline to apply a specific legal rule that has
> not been squarely established by [the Supreme] Court.

Harrington, 131 S. Ct. at 786 (citations and internal quotation marks omitted).[4]

"This is a difficult to meet, and highly deferential standard for evaluating state-court

rulings, which demands that state-court decisions be given the benefit of the doubt."  Cullen, 131

S. Ct. at 1398 (citations and internal quotation marks omitted).  The petitioner carries the burden

of proof, and review under § 2254(d) is limited to the record that was before the state court that

adjudicated the claim on the merits.  Id.

### III.  DISCUSSION

A.  Fourth Amendment

In Ground One, Caines argues that "THE ARREST WARRANT WAS ISSUED

UNLAWFULLY AND DEFENDANT'S STATEMENT OBTAINED IN ITS WAKE WAS

UNLAWFULLY TAKEN VIOLATING HIS IV, V AND VI AMENDMENT RIGHTS OF THE

U.S. CONSTITUTION."  (Dkt. 5 at 4.)  As factual support, he states:

---

[4] See also Wright v. Van Patten, 552 U.S. 120, 126 (2008) ("Because our cases give no
clear answer to the question presented, let alone one in [petitioner's] favor, it cannot be said that
the state court unreasonabl[y] appli[ed] clearly established Federal law") (citation and internal
quotation marks omitted).

This crime was committed on March 27, 1993; Defendant was arrested November 19, 1995.  The supposed break came on November 16, 1995 in the form of a statement by Tamika McGriff, the girlfriend of one of the (Codefendants).  She reported an alleged confession which was never investigated as to the reliability of truth.  (Da1-2)  No checking was done before a neutral magistrate, as it must be.  Instead, defendant was denied his freedom, and suffered the concomitant pressures, based solely on the unmediated impressions of a homicide detective.  Specifically, the twin requisites of a judicial officer administering the oath and deciding probable cause on a record preserved for review are absent.  These are requirements of constitutional import.

(Dkt. 5 at 4.)

Caines raised the Fourth Amendment claim on direct appeal in his pro se supplemental brief.  (Dkt. 1 at 25.)  The Appellate Division rejected the argument without discussion.  Id. at 40.  Respondents argue that Caines is not entitled to habeas relief on his Fourth Amendment claim because the claim is not cognizable since Caines had a full and fair opportunity to litigate the claim in the state courts and, in any event, his arrest did not violate the Fourth Amendment.  (Dkt. 14 at 12-14.)

Caines's Fourth Amendment claim is precluded by the holding of Stone v. Powell, 428 U.S. 465 (1976), wherein the Supreme Court held that

> where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.  In this context the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force.

Stone v. Powell, 428 U.S. at 494-95 (footnotes omitted); see also Marshall v. Hendricks, 307 F. 3d 36, 82 (3d Cir. 2002) ("An erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the [Stone] bar") (citations omitted).

8

In this case, Caines had a full and fair opportunity to present his Fourth Amendment claim to the New Jersey courts.  Petitioner "is at most alleging that the Fourth Amendment claims were decided incorrectly or incompletely by the New Jersey courts, allegations which are insufficient to surmount the Stone bar."  Marshall, 307 F. 3d at 82.  Because Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim and "[a]n erroneous . . . resolution by a state court of a Fourth Amendment claim does not overcome the [Stone] bar," id., Petitioner's Fourth Amendment claim is not cognizable in this § 2254 proceeding.  See Hubbard v. Jeffes, 653 F.2d 99, 103 (3d Cir. 1981).

B.  Confrontation Clause

In Ground Two, Caines asserts that "THE "OPENING THE DOOR" DOCTRINE WAS MISAPPLIED TO THE ABSENT WITNESS, ROGER HOYTE'S STATEMENT, THUS ADMITTING HIS OUT OF-COURT STATEMENT UNLAWFULLY IN VIOLATION OF HIS VI AMENDMENT RIGHT TO CONFRONTATION."  (Dkt. 5 at 4.)  As factual support, he states:

> To be clear, however, the issue raised now concerns separately the justifiable ambits of the "opening the door" doctrine, the analytical template that should have been applied to the "Hoyte problem".
>
> The first thing noted is that Hoyte was not subject to cross-examination.  This lack of an opportunity to confront an individual providing the most damning of testimony ranks at the very top of egregious deprivation a defendant should not endure.  Indeed, by all appearances, the Appellate Division has met a result it liked and arranged it[]s opinion accordingly.  This assertion is crystal clear from the leading New Jersey cases addressing the "opening the door" doctrine, the correct analytical framework to apply to this problem.  "Opening the door" allows the introduction of inadmissible evidence as a tactical response in two distinct situations.  "Completeness,["] that is, when an opponent elicits part of a statement and the proponent supplies the missing wholeness, the next instance is when an opponent's elicitation of testimony permits a proponent to present otherwise

9

inadmissible evidence is the "curative admissibility" situation.  That is when the opponent has managed to get inadmissible evidence allowed, that evidence is prejudicial, and the proponent's evidence will counter that prejudice.  It can readily be seen that neither of these rules rationally or conceivably apply to the facts at bar.  The shift of theory as well as an alteration of facts from an inappropriate harmlessness analysis to a pertinent and revealing application of a recognized doctrine, captures what was lost before, laying bare the fundamental unfairness of the use of the "absent witness's" statement.

(Dkt. 5 at 5-6.)

Caines raised his Confrontation Clause claim before the Appellate Division on direct appeal, arguing that the trial court violated the Confrontation Clause by allowing Detective Britt-Headen to read the statement given by Roger Hoyte, one of the persons accused of the 1995 cab driver murders, on re-direct; Hoyte's statement implicated Caines in the 1993 murder of cab driver Thompson.  (Dkt. 1 at 25.)  The Appellate Division rejected the claim as follows:

Although defense counsel's cross-examination of Britt-Headen did not elicit testimony that Hoyte had identified defendant as a participant in the murder, it did indicate that some person other than McGriff had "provided a statement naming this defendant."  The testimony elicited by this cross-examination also indicated that the alleged source of the unidentified informant's information was "comments made by the defendant in reference to that homicide."  Thus, the prosecutor's redirect examination of Britt-Headen simply identified Hoyte as the individual who informed her of defendant's alleged incriminatory statement and provided additional details concerning that statement.

*                    *                    *

It appears that defendant's trial counsel may have thought that by eliciting evidence that Hoyte, Williams and McGriff had brought defendant's name to the attention of the police, he could persuade the jury that the State's case was suspect because it was built on information provided by persons who were accused of one or more of the cab drivers murders or, in the case of McGriff, a girlfriend of one of the accused.  In fact, defense counsel suggested this theme in his re-cross examination of Detective Britt-Headen . . . .

In any event, whatever defense counsel's strategy may have been, it is clear that he was the one who first introduced evidence of the non-witnesses' statements

10

incriminating defendant and that he did not raise any objection when the prosecutor elicited additional details concerning the contents of those statements in his redirect examination of Britt-Headen. We are generally unwilling to find reversible error under such circumstances unless it is manifest that the errors plainly impaired the integrity of the proceedings . . . .

Moreover, the State presented overwhelming evidence of defendant's guilt. Defendant's statement to the police provided clear, unequivocal evidence that he was a participant in the felony murder. Defendant's attempt to disavow that statement at trial was transparently incredible, and the prosecutor subjected defendant to withering cross-examination. In addition, defendant's alleged incriminatory statement to McGriff shortly after the murder provided strong corroboration of his confession to the police. Consequently, we are satisfied that Britt-Headen's testimony concerning Hoyte's alleged statement to her was not capable of producing an unjust result.

During jury deliberations, defendant belatedly raised an objection to the part of the prosecutor's redirect examination of Britt-Headen which elicited the details of Hoyte's incriminating statement. However, at that point it was too late for the court to exclude the testimony or to give the jury an effective curative instruction, and the only remedy defendant sought was a mistrial. We are convinced for the reasons previously discussed that the denial of this motion did not constitute an abuse of discretion that resulted in a manifest injustice.

(Dkt. 1 at 30-34) (citations and internal quotation marks omitted).

In the Answer, Respondents cite United States v. Lopez-Medina, 596 F.3d 716, 733 (10th Cir. 2010), for the proposition that "there is no Confrontation Clause violation when the defendant opens the door to the admission of hearsay testimony." (Dkt. 14 at 15.)

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." This guarantee applies to both federal and state prosecutions. See Pointer v. Texas, 380 U.S. 400 (1965). In Crawford v. Washington, 541 U.S. 36 (2004), the Supreme Court held that the Sixth Amendment's Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant has had

11

a prior opportunity for cross-examination." Id. at 53-54; see also Davis v. Washington, 126 S.
Ct. 2266,  2273 (2006).  However, Crawford was decided on March 8, 2004, four years after the
Appellate Division rejected the Confrontation Clause claim in this case (on July 20, 2000), and
three years after Caines's conviction became final on direct review (on April 19, 2001).
Crawford does not apply to Caines's Confrontation Clause claim because the case was decided
after his conviction became final on direct review and Crawford is not retroactive to cases on
collateral review.  See Whorton v. Bockting, 549 U.S. 406, 416 (2007).  Accordingly, Caines's
claim is governed by Ohio v. Roberts, 448 U.S. 56 (1980), wherein the Court held that the
Confrontation Clause did not bar the admission of testimonial hearsay if the statement had
adequate indicia of reliability, i.e., fell within a "firmly rooted hearsay exception," or bore
"particularized guarantees of trustworthiness."  Id. at 66.

        In any event, the Confrontation Clause "does not bar the use of testimonial statements for
purposes other than establishing the truth of the matter asserted."  Crawford, 541 U.S. 59 n.9.
Respondents correctly contend that before and after Crawford, federal courts found no
Confrontation Clause violation where the defendant "opened the door" to hearsay evidence.  See,
e.g., Charles v. Thaler, 629 F.3d 494, 501 (5th Cir. 2011) ("Otherwise inadmissible hearsay
evidence may be offered to impeach the defendant on a topic to which he has opened the door,
and no violation of the Confrontation Clause arises"); United States v. Jimenez, 509 F.3d 682,
691 (5th Cir. 2007) (rejecting Confrontation Clause challenge to admission of testimony where
defense counsel opened the door by asking the witness on cross-examination the basis for his
suspicions about defendant); United States v. Acosta, 475 F.3d 677, 684 (5th Cir. 2007) (where
defendant's cross-examination discredited witness's statement, "[t]his opened the door for the

12

statement's admission to rebut the impression that [witness]'s reluctance to testify was based on a fear that his statements at trial contradicted an earlier statement in which he lied to obtain a more lenient sentence," and did not violate Confrontation Clause); United States v. Robinson, 272 Fed. App'x 421, 429 (6th Cir. 2007) (where officer's testimony concerning information police had received about a possible shooter was not offered for the truth of the matter but to explain, in response to defense cross-examination, why the police did not wait before breaking down the door, statement did not violate the Confrontation Clause); United States v. Chance, 306 F.3d 356, 385 (6th Cir. 2002) ("[W]here one party has 'opened the door' on an issue, the opponent, in the trial court's discretion, may introduce evidence on the same issue to rebut any false impression that may have been created by the earlier admission of evidence").

Caines has not cited any Supreme Court decision clearly establishing that evidence admitted in response to defendant's "opening the door" violates the Confrontation Clause. Because the adjudication of Petitioner's Confrontation Clause claim was not contrary to, or an unreasonable application of clearly established Supreme Court precedent, Caines is not entitled to habeas relief on Ground Two.

## C.  Due Process - Prosecutorial Misconduct

In Ground Three, Caines asserts that "THE PROSECUTOR COMMITTED A SHOCKING AND PREJUDICIAL SERIES OF "MISSTATEMENTS" WHICH REQUIRE REVERSAL."  (Dkt. 5 at 6.)  As factual support, he asserts:

> Aside from the instance of prosecutorial misconduct raised on direct appeal (The comments that lead detective's testimony could jeopardize her career) there were other instances of severe misconduct that were highly prejudicial and warrant reversal.  These errors loomed more ominous because the only substantive evidence of defendant['s] guilt were his uncorroborated statement and the alleged

13

statement given by Tamika McGriff, and the statement of Roger Hoyte which was inadmissible. No extraneous evidence was offered to verify these statements. Despite the shaky nature of the "associates" reports, and the incomplete Mirandized statement of the defendant to police that he knew only of a "mission," a robbery without knowledge of arms, defendant was convicted of felony -murder. Under these circumstances, overreaching by the prosecutor no doubt had an exaggerated effect on the outcome of the trial. (Da 18-20)  Perhaps the most outlandish instance of misconduct was the prosecutor's resurrecting the absent and unexamined Roger Hoyte as a star witness. (6T126-12 to 127-5; 129-9-10). Close behind were direct attacks on defendant's character not ostensibly tethered to any testimony:  "a man without any integrity whatsoever" (6T130-21 to 22), and "this guy is evil." (6T149-15-16).

(Dkt. 5 at 6-7.)

Caines raised the prosecutorial misconduct claim on direct appeal, arguing that the

prosecutor improperly stated during summation that the police would not jeopardize their careers

by lying.[5]  The Appellate Division considered and rejected the claim as follows:

Prosecutorial misconduct can be grounds for reversal only where the misconduct was so egregious that it deprived the defendant of a fair trial . . .

We recognize that it is improper for a prosecutor to urge the jury to accept the credibility of a police officer's testimony on the ground that the officer would jeopardize his or her career by lying.  However, in this case the prosecutor's comments were made in response to a defense summation which urged the jury not just to find that Detective Britt-Headen's trial testimony was incredible but that she and other members of the Newark police department had fabricated defendant's inculpatory statements.  The State was entitled to make a vigorous and forceful response to this argument.  Although that response could not take the form of the prosecutor vouching for Detective Britt-Headen's credibility or urging the jury to accept her testimony simply because she is a police officer, the prosecutor was entitled to emphasize the gravity of the charge that the defense had directed against her and other members of the Newark Police Department . . . .

_____

[5] The prosecutor's reference to the statement of Roger Hoyte was not prosecutorial misconduct, as this evidence did not violate the Confrontation Clause.  Caines also challenges the prosecutor's reference to Caines as "evil" and "without any integrity whatsoever" but he does not explain how these statements denied due process.

14

> In any event, even if it was improper for the prosecutor to argue that Detective Britt-Headen and the other officers involved in defendant's interrogation would jeopardize their careers if they had falsified defendant's statement, we are satisfied that the prosecutor's comments, which were fleeting and did not elicit any objection from defendant, were not so egregious that [they] deprived the defendant of a fair trial.

(Dkt. 1 at 36-38) (citations and internal quotation marks omitted).

Prosecutorial misconduct may "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). This occurs only if the misconduct constitutes a "failure to observe that fundamental fairness essential to the very concept of justice." Id. at 642; see also Greer v. Miller, 483 U.S. 756, 765 (1987) (To violate due process, "the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial") (citation and internal quotation marks omitted). It is not enough to show that the prosecutor's conduct was universally condemned. See Darden v. Wainwright, 477 U.S. 168, 181 (1986). The quantum or weight of the evidence is crucial to determining whether the prosecutor's statements before the jury were so prejudicial as to result in a denial of due process. See Darden, 477 U.S. at 182; Donnelly, 416 U.S. at 644; Moore v. Morton, 355 F.3d 95, 111 (3d Cir. 2001).

Vouching is a form of prosecutorial misconduct. Improper vouching is "an assurance by the prosecuting attorney of the credibility of a Government witness through personal knowledge or by other information outside of the testimony before the jury." United States v. Walker, 155 F.3d 180, 184 (3d Cir. 1998); see also United States v. Lore, 430 F.3d 190, 211 (3d Cir. 2005) (Vouching occurs when a prosecutor "(1) assures the jury that the testimony of a government witness is credible, and (2) . . . bases his assurance on either his claimed personal knowledge or

other information not contained in the record").  The Supreme Court has observed that "[t]he prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers:  such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence."  United States v. Young, 470 U.S. 1, 19 (1985).  However, where the "prosecutor's statement of his belief that respondent intended to commit a fraud contained no suggestion that he was relying on information outside the evidence presented at trial [and h]e supported his comment by referring to respondent's own testimony . . . when viewed in context, the prosecutor's remarks cannot be read as implying that the prosecutor had access to evidence outside the record."  Id.; see also Walker, 155 F.3d at 184 ("[W]here a prosecutor argues that a witness is being truthful based on the testimony given at trial, and does not assure the jury [of] the credibility of the witness based on his own personal knowledge, the prosecutor is engaging in proper argument and is not vouching").

   "On habeas review, however, prosecutorial misconduct such as vouching does not rise to the level of a federal due process violation unless it affects fundamental fairness of the trial.  Thus, habeas relief is not available simply because the prosecutor's remarks were undesirable or even universally condemned.  The relevant question for a habeas court is whether those remarks 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"

Lam v. Kelchner, 304 F.3d 256, 271 (3d Cir. 2002) (quoting Darden, 477 U.S. at 180-81)

(citation omitted).

Here, Caines has not shown that the New Jersey courts' determination that the

prosecutor's comments did not infect the trial with unfairness was unreasonable.  See Gooding v.

Wynder, 2012 WL 207068 (3d Cir. Jan. 25, 2012).  The New Jersey courts' rejection of the

prosecutorial misconduct claims was not contrary to, or an unreasonable application of clearly

established Supreme Court precedent.  See Lam, 304 F.3d at 272.

D.  Due Process - Instructions

In Ground Four, Caines asserts that "DEFENDANT'S TESTIMONY THAT HE WAS

AN INNOCENT COMPANION TO THE ARMED ROBBERS WITH NO KNOWLEDGE OF

WEAPONS OR EXPECTATION OF HARM, THE AFFIRMATIVE DEFENSE TO FELONY-

MURDER HAD TO BE CHARGED, BUT WAS NOT.  THE COURT COMMITTED PLAIN

ERROR BY NOT PROVIDING A "LESSER INCLUDED/LESSER INTENT["] COMPONENT

TO THE ACCOMPLICE LIABILITY INSTRUCTION VIOLATING HIS VI AMENDMENT

DUE PROCESS RIGHTS."  (Dkt. 5 at 7.)  As factual support, he states:

> Defendant testified quite clearly that he was in the dark as to the armed robbery.
> (4T5-19 to 34-3)  Despite this testimony, counsel failed to request and the [court]
> did not charge the four part affirmative defense to felony-murder.  (7T45-3 to 48-
> 6).  Defendant put in issue his lack of knowledge of a weapon or deadly intent.
> His trial counsel[']s failure to request the affirmative defense and Appellate
> counsel's failure to raise the omission clearly constitute ineffective assistance of
> counsel.  The accomplice charge failed [to] impart two important principles to the
> jury made central by the facts of the case.  (7T48-17 to 53-11)  First the court
> failed to advise the jury on the vagaries of intent, specifically that Mr. Caines may
> have possessed a different and lesser intent than Mr. Mayo and Mr. Williams.
> The court said instead, in exhausting its comments on the matter, "[a]nd that this
> defendant possessed a criminal state of mind that's required to prove against the
> person who actually committed the criminal acts."  (7T53-6 to 9)  Alternatively,

17

by not charging the affirmative defense sua sponte, the trial court committed plain
error.  So to, closely allied and almost as a corollary, the court failed to advise the
jury that Caines may be convicted of a lesser crime than Mayo and Williams, the
lesser-included-offense charge relevant here being robbery for (armed robbery
(and felony-murder), if exoneration itself were not chosen.  [sic]

(Dkt. 5 at 7-8.)

(1) Did the accomplice liability instruction violate due process?

Caines challenged the sufficiency of the accomplice liability instructions on direct appeal.

The Appellate Division rejected the claim as follows:

[D]efendant argues that the court's accomplice liability instruction implied that
defendant could be convicted as an accomplice based on his "silent assent and
approval - inferred solely from a lack of disapproval.". . . We are satisfied that the
court's accomplice liability instruction, considered in its entirety, clearly
explained the elements of accomplice liability and does not provide a basis for a
reversal of defendant's conviction.

*                    *                    *

The[] instructions clearly explained that the jury had to find that defendant
"aid[ed] or agree[d] or attempt[ed] to aid" Mayo and/or Williams "[w]ith the
purpose of promoting or facilitating the commission of the offense."  N.J.S.A.
2C:2-6c(1)(b).  The charge further explained that mere presence at the scene, or
silent assent, are not sufficient grounds on which to base accomplice liability.
Consequently, the court's instructions closely followed the model charge and
clearly explained the elements of accomplice liability.

(Dkt. 1 at 38-40.)

In Waddington v. Sarausad, 555 U.S. 179 (2009), Sarausad filed a § 2254 petition

challenging an accomplice liability instruction that required the accomplice to have knowledge of

the crime that occurred for which the petitioner was charged as an accomplice, arguing that an

additional clarifying instruction should have been given so the jury would not convict him as an

accomplice to second-degree murder based solely on his admission that he anticipated that an

18

assault would occur.  The District Court granted the petition on the ground that the state post-conviction court unreasonably applied Estelle v. McGuire, 502 U.S. 62 (1991), Sandstrom v. Montana, 442 U.S. 510 (1979), and In re Winship, 397 U.S. 358 (1970), where the instruction on the elements of accomplice liability were ambiguous and there was a reasonable likelihood that the jury applied the instruction in a way that violated the Constitution.  The Ninth Circuit affirmed, but the Supreme Court reversed.  First, the Supreme Court reiterated the general standard that the Court has applied for jury instructions under the Due Process Clause and § 2254(d)(1):

> Even if there is some ambiguity, inconsistency, or deficiency in the instruction, such error does not necessarily constitute a due process violation.  Rather, the defendant must show both that the instruction was ambiguous and that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt.  In making this determination, the jury instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.  Because it is not enough that there is some slight possibility that the jury misapplied the instruction, the pertinent question is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.

Sarausad, 555 U.S. at 190-91 (citations and internal quotation marks omitted).

Next, applying this standard, the Supreme Court found that the Washington courts had reasonably concluded that the accomplice liability instruction was not ambiguous, where "[t]he instruction parroted the language of the statute, requiring that an accomplice 'in the commission of the crime' take action ' with knowledge that it will promote or facilitate the commission of *the crime*.' . . . .  By its plain terms, it instructed the jury to find Sarausad guilty as an accomplice 'in the commission of the [murder]' only if he acted 'with knowledge that [his conduct] will promote or facilitate the commission of the [murder].'  Because the conclusion reached by the

Washington courts that the jury instruction was unambiguous was not objectively unreasonable, the Court of Appeals' 28 U.S.C. § 2254(d)(1) inquiry should have ended there." Sarausad, 555 U.S. at 191-92 (citations, footnote and internal quotation marks omitted).

Then, the Supreme Court ruled that, even if the instruction was ambiguous, it was not so ambiguous as to violate the Due Process Clause. "The Washington courts reasonably applied this Court's precedent when they determined that there was no 'reasonable likelihood' that the prosecutor's closing argument caused Sarausad's jury to apply the instruction in a way that relieved the State of its burden to prove every element of the crime beyond a reasonable doubt." Sauausad, 555 U.S. at 192.

In this case, the Appellate Division determined that the accomplice liability instructions, as a whole, clearly explained the elements of accomplice liability as to robbery.[6]  (Dkt. 1 at 38-40.)  Caines has not shown this to be unreasonable.  Nor has he shown that there was a reasonable likelihood that the jury applied the accomplice liability instruction in a way that relieved the state of its burden of proof.  As in Sarausad, this Court finds that the Appellate Division's adjudication of the accomplice liability instruction claim was not contrary to, or an unreasonable application of clearly established Supreme Court holdings.  See Williams v. Beard, 637 F.3d 195, 223-24 (3d Cir. 2011) (rejecting Pennsylvania petitioner's challenge to accomplice liability charge because there was "no reasonable likelihood that the jury applied the instruction in a manner that relieved the Commonwealth of its burden of proof with respect to first degree murder); Barkley v. Ortiz, 209 Fed. App'x 120, 124 (3d Cir. 2006) (rejecting New Jersey petitioner's habeas claim that "the trial court's jury instructions on accomplice liability

_____

[6] The jury acquitted Caines of purposeful and knowing murder.  (Dkt. 1 at 20.)

improperly failed to notify the jury that they could find Barkley guilty of a crime of lesser degree

than the principal if they were to find that Barkley possessed a mental state lower than that of the

principal" because it raised issue of New Jersey law).

(2) Did the failure to charge the four-part affirmative defense to felony murder violate due process?

Caines argued on appeal from the order denying PCR that the trial court improperly failed

to charge the affirmative defense to felony murder, and that counsel was ineffective in failing to

request this instruction. In considering these claims, the Appellate Division found:

> We next consider defendant's argument . . . that he received ineffective assistance of trial counsel because his attorney failed to request an instruction on the affirmative defense to felony murder, which has the following elements:
>
> [Defendant:]
>
> (a) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and
>
> (b) Was not armed with a deadly weapon, or any instrument, article or substance readily capable of causing death or serious physical injury and of a sort not ordinarily carried in public places by law-abiding persons; and
>
> (c) Had no reasonable ground to believe that any other participant was armed with such a weapon, instrument, article or substance; and
>
> (d) Had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury.
>
> [N.J.S.A. 2C:11-3a(3)]
>
> In this case the judge properly instructed the jury on the substantive elements of the charged offenses, which included the elements of the felony murder defense. Moreover, in light of the fact that defendant was convicted of conspiracy to commit robbery as well as first-degree robbery, it is obvious that the jury did not find the elements of the affirmative defense. Therefore, there is no merit to defendant's argument.

(Dkt. 16-4 at 8-9.)

In essence, the Appellate Division found that Caines was not entitled to the affirmative defense instruction under New Jersey law, given that the facts before the jury negated the fourth element of the defense; the Appellate Division noted that this was confirmed by Caines's conviction of conspiracy to commit robbery.  "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  Bradshaw v. Richey, 546 U.S. 74, 76 (2005).   Caines is not entitled to habeas relief on this due process claim involving the failure to instruct the affirmative defense to felony murder because the New Jersey courts' rejection of the claim is not contrary to, or an unreasonable application of clearly established Supreme Court holdings.  See Estelle, 502 U.S. at 71-72 ("the fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief"); Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997) (habeas petitioner who challenges state jury instructions must "point to a federal requirement that jury instructions on the elements of an offense . . . must include particular provisions," or demonstrate that the jury "instructions deprived him of a defense which federal law provided to him"); Delbridge v. Moore, 2005 WL 3008805 (D.N.J. Nov. 9, 2005 (rejecting § 2254 petitioner's challenge to failure to charge affirmative defense to felony murder because the defense is a creation of New Jersey law).

E.  Double Jeopardy

In Ground Five, Caines asserts that "THE SUDDEN TERMINATION OF DEFENDANT['S] FIRST TRIAL PURSUANT TO DEFENSE COUNSEL'S UNNECESSARY MISTRIAL MOTION ESTABLISHED A BAR OF DOUBLE JEOPARDY FOR THE SECOND

TRIAL BECAUSE THE FAILURE OF EITHER THE STATE TO PROVIDE, OR OF

DEFENSE COUNSEL TO PROCURE, THE MISSING REPORTS WAS NOT A

JUSTIFIABLE EXCUSE."  (Dkt. 5 at 8.)  As factual support, he states:

> The testimony of Det. Noreen Britt-Headen in defendant's first trial was abruptly broken off by her mention of certain interviewees of whom defense counsel had no knowledge.  (2FT26-6 to 38-5).  After court was convened the following day, defense counsel moved for a mistrial on grounds of being deprived of potentially material information in the state's possession.  (3FT3-1 to 7-10).  Following extensive discussion[,] the court basically found an unfortunate convergence of circumstances without either side at fault.  (3FT25-14 to 28-18).  When the jury was called out, the court declared a mistrial.  (3FT33-23 to 35-9).  At no time on October 8, 1997, the day Det. Britt-Headen's testimony was halted, nor on October 9, 1007, the day the mistrial was declared, was any colloquy put on the record in which defendant addressed the court or his counsel spoke for him advising the court that defendant understood the situation and also understood his rights available to him to address it.  (This would not have been an idle exercise. Defendant may have been quite satisfied with his first jury, a matter that is clearly his Right.  Further, he may have had serious reservations about following up the so-called Washington-Davis leads in light of his intentions to testify.  His testimony sketched his arguably unknowing presence on the corner when Mayo or Williams shot the cabbie during the robbery.  Washington and Davis were irrelevant to the defense from this standpoint.)  We must remember it is Mr. Caines's right, not Mr. Hartwyk's . . . .  [A]s a core right imbedded in our organic documents, double jeopardy, in terms of advisement and certainty of understanding, is a close analogue of the right whether or not to testify.  As such it occupies the highest tier of importance, one that requires the court to inquire on the record whether the defendant understands his right and knowingly waives it.

(Dkt. 5 at 8-10.)

The Double Jeopardy Clause forbids that "any person be subject for the same offence to

be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  The Double Jeopardy Clause

"protects a criminal defendant from repeated prosecutions for the same offense," Oregon v.

Kennedy, 456 U.S. 667, 671 (1982), and affords the defendant a "valued right to have his trial

completed by a particular tribunal," Wade v. Hunter, 336 U.S. 684, 689 (1994).  "The Double

Jeopardy Clause, however, does not offer a guarantee to the defendant that the State will vindicate its societal interest in the enforcement of the criminal laws in one proceeding." Kennedy, 456 U.S. at 672.  The Supreme Court held in Kennedy that "[o]nly where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion."  Id. at 676.

In this case, the Appellate Division found that the prosecutor had turned the statements over to Caines's prior attorney but his current attorney did not receive them.  Accordingly, on the facts found by the Appellate Division, the prosecutor did not intend to "goad" Caines into moving for a mistrial.  The AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (a district court must "presume the [state] court's factual findings to be sound unless [petitioner] rebuts the 'presumption of correctness by clear and convincing evidence.'").  Moreover, the AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  Here, Caines has not rebutted the presumption that the New Jersey court's finding that the prosecutor had turned over the relevant statements to Caines's prior attorney by clear and convincing evidence, and he has not shown that New Jersey's adjudication of the claim was based on an unreasonable determination of the facts in light of the evidence presented.

24

Caines next argues that double jeopardy should have barred retrial because the right to move for a mistrial ultimately belonged to Caines, and counsel moved for the mistrial without obtaining authorization from Caines.  The Supreme Court has "recognized that the accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal . . . .  In addition, [the Court] ha[s] held that, with some limitations, a defendant may elect to act as his or her own advocate." Jones v. Barnes, 463 U.S. 745, 751 (1983) (citations omitted).

Here, Respondents correctly contend that "[t]he Supreme Court has never suggested that decisions about mistrials are 'of such a moment' that they can be made only by the defendant himself, and every circuit to consider the question has concluded that decisions regarding mistrials belong to the attorney, not the client." United States v. Chapman, 593 F.3d 365, 368 (4th Cir. 2010) (citing United States v. Burke, 257 F.3d 1321, 1324 (11th Cir. 2001); United States v. Washington, 198 F.3d 721, 723 (8th Cir. 1999); Watkins v. Kassulke, 90 F.3d 138, 143 (6th Cir. 1996); Galowski v. Murphy, 891 F.2d 629, 639 (7th Cir. 1989)).  Although the Third Circuit has not addressed the issue in a precedential opinion, in United States v. Allick, 386 Fed. App'x 100 (3d Cir. 2010), the Third Circuit rejected Allick's argument challenging a mistrial on the ground that he was neither present during the in-chambers conference discussing mistrial nor consulted regarding the mistrial.  Like other circuits, the Third Circuit ruled that the decision "to request or consent to a mistrial is a strategic decision that ultimately rests with counsel." Id. at 104.

In this case, Caines is not entitled to habeas relief on his double jeopardy claim because he has not shown that the New Jersey courts' adjudication of the claim was based on an

25

unreasonable determination of the facts in light of the evidence presented, or was contrary to, or

an unreasonable application of Supreme Court precedent.  See 28 U.S.C. § 2254(d)(1) and (d)(2).

F.  Ineffective Assistance of Counsel

In Ground Six, Caines argues that counsel was constitutionally ineffective in failing to

request a hearing to determine if there was probable cause for his arrest, failing to move to

suppress his out-of-court statement as fruit of an unlawful arrest, and failing to object to the

detective's reading of Roger Hoyte's statement to the jury.  Specifically, he asserts that

"NUMEROUS LAPSES IN TRIAL COUNSEL'S REPRESENTATION DEPRIVED

DEFENDANT OF HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE

VI, AND XIV AMENDMENT[S] OF THE UNITED STATES CONSTITUTION[.]"  (Dkt. 5 at

10.)  As factual support, he states:

> Defendant[']s arrest was illegal.  As the primary investigator Detective Noreen
> Britt-Headen, signed and executed the arrest warrant.  Therefore making the
> warrant and the arrest invalid, or illegal in nature.  Trial counsel failed in his duty
> to file a pre-trial motion to suppress defendant's inculpatory statement, as well as
> request a probable cause hearing to determine the reliability of uncorroborated
> statements given to detectives prior to defendant's arrest.  Defendant's trial
> attorney failed to make timely objection to Detective Britt-Headen[']s reading
> Roger Hoyte's statement to the jury as this was a non-testifying witness.

(Dkt. 5 at 10.)

The Sixth Amendment, applicable to states through the Due Process Clause of the

Fourteenth Amendment, guarantees the accused the "right . . . to have the Assistance of Counsel

for his defense."  U.S. Const. amend. VI.  The right to counsel is the right to the effective

assistance of counsel, and counsel can deprive a defendant of the right by failing to render

adequate legal assistance.  See Strickland v. Washington, 466 U.S. 668, 686 (1984).  A claim that

26

counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied.  See Strickland, 466 U.S. at 687.  First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.  To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  Id. at 690.  The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance.  Id.

To satisfy the prejudice prong, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.  As the Supreme Court explained,

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

Strickland, 466 U.S. at 695-696.

The Supreme Court instructs that a court need not address both components of an ineffective assistance claim "if the defendant makes an insufficient showing on one."  Strickland,

27

466 U.S. at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  Id.

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct *so undermined* the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  Cullen, 131 S. Ct. at 1403 (quoting Strickland, 466 U.S. at 686 (emphasis in Cullen).  Habeas review of a state court's adjudication of an ineffective assistance claim is "doubly deferential."  Knowles v. Mirzayance, 556 U.S. 111, 123 (2009).

(1) Was counsel constitutionally ineffective in failing to timely object to Britt-Headen's reading of Roger Hoyte's statement to the jury on re-direct?

Caines argues that his trial attorney was ineffective in failing to timely object to Britt-Headen's reading of Hoyte's statement, which incriminated Caines.  This Court has rejected Caines's claim that the admission of Hoyte's statement violates the Confrontation Clause. Because counsel cannot be constitutionally deficient in failing to raise a losing objection, Caines has not shown that the failure to object to admission of the statement violated Strickland.

(2) Was counsel constitutionally deficient in failing to seek a probable cause for arrest hearing and to move to suppress Caines's confession as the fruit of an unlawful arrest?

Caines contends that counsel was constitutionally ineffective in failing to request a hearing to determine whether there was probable cause for his arrest and, presuming the absence of probable cause, that counsel was ineffective in failing to move to suppress the statement Caines gave to police as the fruit of an arrest without probable cause.

The Supreme Court has held that "[w]here defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable

probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Kimmelman v. Morrison, 477 U.S. 365, 375 (1986).

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. In Wong Sun v. United States, 371 U.S. 471 (1963), the Supreme Court ruled that "verbal evidence which derives so immediately from an unlawful entry and an unauthorized arrest as the officers' action in the present case is no less the 'fruit' of official illegality than the more common tangible fruits of the unwarranted intrusion." Id. at 485. The Court ruled:

> We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police.  Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.

Wong Sun, 371 U.S. at 487-88 (internal quotation marks omitted).

In Brown v. Illinois, 422 U.S. 590 (1975), the Court held that the giving of the Miranda warnings, by themselves, did not assure that the statement of defendant was "of sufficient free will as to purge the primary taint of the unlawful arrest." Id. at 600.  "In order for the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken, Wong Sun requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be sufficiently an act of free will to purge the primary taint." Id. at 602 (citation and internal quotation marks omitted).  The Court explained:

29

> The question whether a confession is the product of a free will under Wong Sun must be answered on the facts of each case.  No single fact is dispositive.  The workings of the human mind are too complex, and the possibilities of misconduct too diverse, to permit protection of the Fourth Amendment to turn on such a talismanic test.  The Miranda warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest.  But they are not the only factor to be considered.  The temporal proximity of the arrest and the confession, the presence of intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct are all relevant.

Brown, 422 U.S. at 603-04 (citations, footnotes and internal quotation marks omitted).

Thus, it is established that, under the Fourth Amendment, "a confession obtained by exploitation of an illegal arrest may not be used against a criminal defendant."  Kaupp v. Texas, 538 U.S. 626, 627 (2003) (citation and internal quotation marks omitted).  The Supreme Court held in Kaupp that Wong Sun required suppression of  the confession of Kaupp, a 17-year-old who was arrested without probable cause, where the state failed to show that it was "'an act of free will [sufficient] to purge the primary taint of the unlawful invasion.'"  Kaupp, 538 U.S. at 633 (quoting Wong Sun, 371 U.S. at 486).  As the Court explained,

> Demonstrating such purgation is, of course, a function of circumstantial evidence, with the burden of persuasion on the State.  Relevant considerations include observance of Miranda, the temporal proximity of the arrest and the confession, the presence of intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct.

Kaupp, 538 U.S. at 633 (citations and internal quotation marks omitted).

 Significantly, the holding of Wong Sun does not apply to Caines's case unless his arrest (prior to the statement) violated the Fourth Amendment.  Contrary to Caines's contention, Supreme Court "has never invalidated an arrest supported by probable cause solely because the

officers failed to secure a warrant." Gerstein v. Pugh, 420 U.S. 103, 113 (1975).[7] "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed. " Devenpeck v. Alford, 543 U.S. 146, 152 (2004). "Whether [an] arrest [is] constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it - whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964); see also Virginia v. Moore, 553 U.S. 164, 171 (2008). "The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances. We have stated, however, that the substance of all the definitions of probable cause is a reasonable ground for belief of guilt, and that the belief of guilt must be particularized with respect to the person to be searched or seized." Maryland v. Pringle, 540 U.S. 366, 371 (2003) (citations and internal quotation marks omitted). Probable cause for arrest may be based on hearsay. See Draper v. United States, 358 U.S. 307, 311-312 n.4 (1959).

The Supreme Court held in Draper, 358 U.S. 307, that "identification of the suspect by a reliable informant may constitute probable cause for arrest where the information given is sufficiently accurate to lead the officers directly to the suspect." Wong Sun, 371 U.S. at 480-.

---

[7] The Fourth Amendment does not necessarily require the issuance of an arrest warrant prior to arrest (and imprisonment pursuant to that arrest), but prohibits a police officer from arresting a citizen without probable cause that the person has committed or is committing a crime. Cf. Albright v. Oliver, 510 U.S. 266, 274-75 (1994).

31

On the other hand, in <u>Wong Sun</u> the Court found that, where narcotics agents had no basis in experience for confidence in the reliability of information provided by an informant who had merely suggested that a person known as "Blackie Toy," the proprietor of a laundry somewhere on the 30 blocks of Leavenworth Street, had sold heroin, the police lacked probable cause for arrest. <u>See Wong Sun</u>, 371 U.S. at 480.

Here, Caines argues that his arrest by Britt-Headen violated the Fourth Amendment: "Detective Britt-Headen knowingly and willingly extracted a false statement from Tamika McGriff concerning her accounts of the crime," and "[h]ad a probable cause hearing been requested by trial counsel, it would have been revealed that Detective Britt-Headen knowingly and willingly extracted the above-referenced false statement from McGriff."  (Dkt. 15-4 at 4.) Similarly, in his Reply, Caines emphasizes that his lack of probable cause argument is "based on the alleged failure of the police to establish the reliability of [Tamika McGriff's] statement prior to his arrest."  (Dkt 18 at 11.)

The trial transcript shows, however, that Britt-Headen did not arrest Caines solely on the basis of McGriff's statement.  Britt-Headen testified that, after taking a statement from Tamika McGriff, she interviewed Roger Hoyte, as McGriff had implicated Hoyte in the 1995 cab driver murders Britt-Headen was investigating at the time.  (Dkt. 17-4 at 18-36.)  Britt-Headen further testified that she interviewed Hoyte on November 17, 1995, two days before Caines's arrest on November 19, 1995, and Hoyte told her of a conversation he had had with Lawrence Mayo and James Caines about the 1993 cab driver murder.  (Dkt. 17-4 at 36.)  Britt-Headen read from Hoyte's statement as follows:  "I had a conversation with Larry Mayo and his friend Caines. They told me that they carjacked this Reliable cab driver from Orange and shot him with a

shotgun and then drove him down to the cab, down in the cab to Sanford Avenue . . . .  Caines told me he shot the cab driver and told me, and Larry Mayo told me Caines did it."  Id.

In this case, before arresting Caines, Detective Britt-Headen had the statement of Tamika McGriff, as well as the statement of Roger Hoyte, which corroborated McGriff 's statement and connected Caines to the murder with sufficient particularity to satisfy the probable cause standard.  Here, where the Appellate Division summarily rejected the claim, the question under § 2254(d)(1), "is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."  Premo v. Moore, 131 S.Ct. 733, 740 (1011).  Caines has not shown that "no competent attorney would think a motion to suppress would have failed."  Id. at 741.  Caines is not entitled to habeas relief on his ineffective assistance of counsel claim based on the failure to request a probable cause hearing and move to suppress the confession on Fourth Amendment grounds because the New Jersey courts' rejection of the claim was not contrary to, or an unreasonable determination of Strickland, Kimmelman, or other clearly established Supreme Court holdings.

G.  Certificate of Appealability

This Court denies a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2).  See Miller-El v. Cockrell, 537 U.S. 322 (2003).

## IV.  CONCLUSION

Based on the foregoing, the Court dismisses the Petition and denies a certificate of appealability.

s/William J. Martini

_____

**WILLIAM J. MARTINI, U.S.D.J.**

Dated: <u>September 14 </u>, 2012